**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

LOUIS DEGIDIO, INC., LOUIS DEGIDIO SERVICES, INC., JAMES DEGIDIO, and MICHAEL DEGIDIO

Civil No. 19-2690 (JRT/ECW)

Plaintiffs,

v.

INDUSTRIAL COMBUSTION, LLC, and CLEAVER-BROOKS, INC.,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS**

---

Trevor R. Walsten and David A. Brandis, **WALSTEN & TE SLAA, P.A.,** 7900 Xerxes Avenue South, Suite 2000, Bloomington, Minnesota 55431, for plaintiffs.

Jacob Harris, **HUSCH BLACKWELL LLP,** 33 East Main Street, Suite 300 Madison, Wisconsin 53703, for defendants.

Plaintiffs Louis DeGidio, Inc., Louis DeGidio Services, Inc., James DeGidio, and Michael DeGidio (collectively, "DeGidio") filed their Second Amended Complaint ("SAC") in March 2020, alleging a variety of claims against Defendants Industrial Combustion, LLC ("IC") and Cleaver-Brooks, Inc. The essence of the claims is that Defendants improperly terminated their business relationship with DeGidio, who had been exclusive distributors of IC's industrial burners. Because the SAC contains no pleadings about Michael and James DeGidio and there are no circumstances indicating an intent to benefit them as individuals, they do not have standing as third-party beneficiaries, and the Court will

dismiss their claims.  Because the relevant statute of limitations has run as to any claim that Louis DeGidio, Inc., may have had against IC under the Minnesota Franchise Act, the Court will grant the Motion to Dismiss as to that claim.  Because the SAC does not plead fraud or negligent misrepresentation with the required particularity and relies on forward-looking statements, the Court will grant the Motion to Dismiss as to these claims. Finally, because DeGidio has plausibly alleged promissory estoppel as to one of the 2007 promises, but no other promises, the Court will grant in part and deny in part the Motion to Dismiss as to DeGidio's promissory estoppel claims.

## FACTUAL AND PROCEDURAL BACKGROUND

As relevant to the Motion to Dismiss, the SAC alleges several statements made by Defendants to DeGidio.  DeGidio alleges that IC's director of sales and marketing, John Stupec, made several representations in 2007.  (SAC ¶¶ 85–86.)  DeGidio alleges that in November 2007, Stupec represented that Louis DeGidio, Inc. and Louis DeGidio Services, Inc., could continue to distribute IC products and replacement parts in the future and that these entities would not be terminated except for failure to adequately represent IC.  (*Id.* ¶ 85.)  DeGidio also alleges that Stupec stated that "DeGidio's future with IC is good." (*Id.* ¶ 86.)

Shortly after these alleged representations, the DeGidio entities entered into a three-year contract with IC.  (*Id.* ¶¶ 21–22.)  Once that contract expired in November 2010, Louis DeGidio, Inc. stopped all business with IC, and instead Louis DeGidio Services,

Inc., continued to perform work as an IC distributor through August 2019.  (*Id*. ¶ 29.)

DeGidio alleges that as a result of the 2007 promises, they declined multiple offers from

competitors to abandon the exclusive relationship with IC, including one in 2008 and

another in 2016.  (*Id*. ¶ 111.)

In August 2019, James and Michael DeGidio, the shareholders of the Louis DeGidio

entities, met with IC's national sales manager, Carson Lushin, and IC's vice president of

sales for its burner systems group, Kevin Pheney.  (*Id*. ¶ 87.)  At that meeting, Lushin and

Pheney told James and Michael, "We are going to grow the business."  (*Id*.)  However,

within weeks of this meeting, IC sent notices of termination to Louis DeGidio Inc., and

Louis DeGidio Services, Inc.  (*Id*. ¶ 30.)  Other than their appearance at this meeting, and

in allegations discussing signing contracts, the SAC does not contain any allegations about

James and Michael DeGidio as individuals.

In December 2019, the Court denied DeGidio's Motion for a Preliminary Injunction.

(Order Denying Prelim. Inj., Dec. 18, 2019, Docket No. 43.)  Defendants have filed a partial

Motion to Dismiss, seeking dismissal of several claims in the SAC.  (Mot. to Dismiss,

Mar. 24, 2020, Docket No 63.)

**DISCUSSION**

**I.      MOTION TO DISMISS**

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the nonmoving party. *Bhd. of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). To avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II.     MICHAEL'S AND JAMES'S STANDING AS THIRD-PARTY BENEFICIARIES

Defendants argue that James and Michael DeGidio have no standing as individuals in this matter; although they are shareholders in Louis DeGidio, Inc. and Louis DeGidio Services, Inc., they are not personally signatories to any contract, as individuals they have no relationship with Defendants, and they have not alleged any injury. James and Michael counter that although they are not parties to any contract with Defendants, they are nonetheless third-party beneficiaries, have standing to enforce the contract, and presumably any injuries arising out of the contract. They also assert a number of injuries not listed in the SAC.

"Under Minnesota law, to be a third-party beneficiary, the contracting parties must intend their contract to benefit that third party." *Esanbock v. Weyerhaeuser Co*., 367 F. Supp. 3d 925, 936 (D. Minn. 2019) (citing *Hickman v. SAFECO*, 695 N.W.2d 365, 370 (Minn. 2005)). Courts looks to the contract terms or surrounding circumstances to determine intent, including when the third party is referenced by name or category. *Id.* (citing *Todd County v. Barlow Projects*, No. 04-4218, 2005 WL 1115479, at *11 (D. Minn. May 11, 2005)).

The SAC does not contain any allegations about James and Michael, other than as signatories for the entities which did business with Defendants. James and Michael argue that the contracts were intended to provide them with union benefits and rental income on their real-estate properties. However, there are no allegations to this effect in the SAC. Nor do the contracts attached to the SAC give any indication that the parties intended such results. As shareholders in the two DeGidio entities, James and Michael likely suffer harm when their business entities suffer harm; however, such harm, without more, does not render them third-party beneficiaries to the contracts of their business entities.

Accordingly, the Court will grant Defendants' Motion to Dismiss as to James DeGidio and Michael DeGidio and will dismiss the two individual plaintiffs from the action.

### III.      STATUTE OF LIMITATIONS FOR LOUIS DEGIDIO INC. MFA CLAIMS

Defendants argue that because Louis DeGidio, Inc., ceased to do any business with Defendants after the expiration of the 2007 contract in 2010, that entity's claims relating to the Minnesota Franchise Act are time barred by the three-year statute of limitations.

Although statute-of-limitations assertions are usually an affirmative defense, dismissal for failure to state a claim based on statute of limitations can be appropriate if "the complaint itself establishes the defense." *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008). Claims seeking damages under the Minnesota Franchise Act must be brought within three years. Minn. Stat. § 80C.17, subd. 5. The three-year time bar similarly applies to declaratory-judgment claims arising out of the Minnesota Franchise Act. *Weavewood, Inc. v. S & P Home Invs., LLC*, 821 N.W.2d 576, 580 (Minn. 2012).

DeGidio does not dispute that Louis DeGidio, Inc., ceased to have any relationship with Defendants after 2010, but instead argue that certain responses in Defendants' Answer indicate that, despite the SAC's allegations, perhaps Louis DeGidio, Inc. **did** continue to have a contractual relationship. But the Defendants' Answer does not establish such facts. Instead, it is clear on the face of the SAC that Louis DeGidio, Inc., ceased to have any relationship with Defendants in 2010, and accordingly, whatever claims that entity may have had under the Minnesota Franchise Act are now time barred.

Accordingly, the Court will grant Defendants' Motion to Dismiss as to this claim and will dismiss Louis DeGidio, Inc.'s claims under the MFA.

**IV.     FRAUD AND MISREPRESENTATION**

Defendants argue that DeGidio failed to allege a fraud claim with sufficient particularity.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  A successful pleading will include "the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (quoting *U.S. ex. rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009)).

Furthermore, to succeed in a fraudulent misrepresentation claim under Minnesota law, a plaintiff must prove:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge;
> (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false;
> (3) with the intention to induce another to act in reliance thereon;
> (4) that the representation caused the other party to act in reliance thereon; and
> (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Hoyt Props., Inc. v. Prod. Res. Grp., LLC,* 736 N.W.2d 313, 318 (Minn. 2007).  However, forward-looking statements and puffery do not constitute fraud.  *See Teng Moua v. Jani-King of Minn., Inc.*, 810 F. Supp. 2d 882, 890 (D. Minn. 2011) ("[B]ecause fraud requires a

misrepresentation concerning a past or present material fact susceptible of knowledge, statements of prediction, opinion, or 'puffery' cannot form the basis of a fraud claim.")[1]

### a. 2007 Statements

First, DeGidio alleges that IC represented that DeGidio could continue to distribute IC products and replacement parts in the future and that DeGidio would not be terminated except for failure to adequately represent IC.  However, DeGidio does not allege any specifics about this statement, and does not include when, where, or by whom these statements were made.  The allegation thus does not rise to the required level of particularity for fraud.  Furthermore, this statement deals with future possibilities and opinions rather than past or existing material facts susceptible to knowledge.

Second, DeGidio contends that Stupec told DeGidio that DeGidio's future with IC is good.  Unlike the first 2007 statement at issue, this statement satisfies the heightened pleading requirement for fraud because the SAC contains sufficient particularity. However, this statement is puffery and a forward-looking statement.  Such a vague subjective statement and general assertion of future quality cannot support a claim for fraud.

---

[1] *See also Bernstein v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1027, 1031 (D. Minn. 2009) (nonactionable puffery includes boasting and vague, subjective statements and general assertions of quality).

Accordingly, the Court will grant the Motion to Dismiss as to the 2007 statements as regards DeGidio's fraud claims.

### b. 2019 Statements

In August 2019, Lushin and Pheney alleged told DeGidio that they were going to grow the business. DeGidio has stated these allegations with sufficient particularity. However, the statement that they planned to grow the business is also a vague, forward-looking, opinion, and is pure puffery. Furthermore, DeGidio has not demonstrated any reliance on the 2019 statement, given that IC terminated DeGidio within weeks of that meeting.

Accordingly, the Court will grant the Motion to Dismiss as to the 2019 statements as regards DeGidio's fraud claims.

## V. NEGLIGENT MISREPRESENTATION

Defendants similarly argue that DeGidio failed to adequately allege a negligent misrepresentation claim with particularity. *See Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) ("The elements of a negligent misrepresentation claim differ from fraudulent misrepresentation only with respect to the required state of mind.").

Under Minnesota law, to prevail on a negligent misrepresentation claim, the plaintiff must allege:

(1) a duty of care owed by the defendant to the plaintiff;
(2) the defendant supplie[d] false information to the plaintiff;

(3) justifiable reliance upon the information by the plaintiff; and
(4) failure by the defendant to exercise reasonable care in communicating the information.

*Nelson v. Am. Family Mut. Ins. Co.*, 899 F.3d 475, 481 (8th Cir. 2018) (quoting *Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012)).

### a.  2007 Statements

DeGidio alleges that IC had a duty of care towards it, and that IC breached that duty when it represented to DeGidio that it could continue as an IC distributor so long as it adequately performed.  First, as above, DeGidio did not plead this statement with particularity, and the allegation is forward-looking.

Furthermore, DeGidio has not demonstrated that IC had a duty of care.  "[W]here 'adversarial parties negotiate at arm's length, there is no duty imposed such that a party could be liable for negligent misrepresentations.'"  *Smith v. Woodwind Homes, Inc.*, 605 N.W.2d 418, 424 (Minn. App. 2000) (quoting *Safeco Ins. Co. v. Dain Bosworth, Inc.*, 531 N.W.2d 867, 871 (Minn. App. 1995)).  Courts have considered manufacturer-distributor relationships as arms-length commercial transactions.  *See AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1087 (8th Cir. 1998) ("Whirlpool had no duty to disclose to arms-length distributors its unrelated plans to market private label products".)  The parties' relationship, while long and previously apparently cordial, does not appear to be an exception to the rule.

Accordingly, the Court will grant Defendants' Motion to Dismiss for the 2007 statements as relates to negligent misrepresentation.

### b. 2019 Statements

As above, DeGidio has not alleged reliance on the 2019 statement. Accordingly, the Court will grant Defendants' Motion to Dismiss as to the claim of negligent misrepresentation for the 2019 statements.

## VI.   PROMISSORY ESTOPPEL

Finally, Defendants argue that DeGidio failed to state a claim for estoppel because they failed to sufficiently allege a definite promise or any reliance.

DeGidio must allege three elements for promissory estoppel: "(1) a clear and definite promise, (2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and (3) the promise must be enforced to prevent injustice." *TMT Mgmt. Grp., LLC v. U.S. Bank, N.A.*, 940 N.W.2d 239, 244 (Minn. App. 2020) (quoting *Martens v. Minn. Min. & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000)). DeGidio needs only to meet the plausibility threshold of Rule 8. *Stumm v. BAC Home Loans Servicing, LP*, 914 F. Supp. 2d 1009, 1015 (D. Minn. 2012) ("[U]nlike a plaintiff seeking to recover for fraud or negligent misrepresentation, a plaintiff seeking to recover for promissory estoppel may plead detrimental reliance under the general pleading standard of Rule 8(a); she does not have to meet the more stringent standard of Rule 9(b).")

In considering whether alleged promises are clear and definite, the Minnesota Supreme Court has described this element as "requiring that the promisor should reasonably expect to induce action or forbearance on the part of the promisee." *Martens*, 616 N.W.2d at 746. Vague assertions are not sufficient. *See Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995) (holding that an employer's comment that "good employees are taken care of" was "not 'clear and definite' enough to support a claim for promissory estoppel"). However, more measurable promises, ones that can be clearly kept or broken, can suffice. *See Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 834 (Minn. 2011) (defendant's commitment that plaintiff could stop taking night call after 60 years old and not having salary reduced deemed sufficiently clear and definite); *see also Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992) (reporters' promise to treat plaintiff as an anonymous source considered sufficiently clear and definite).

a.  **2007 Promises**

DeGidio alleges that IC represented that DeGidio would be allowed to continue as a distributor of IC products in its territory, so long as it adequately performed. DeGidio also alleges that IC asserted that DeGidio's future with IC was good. DeGidio asserts that it relied on these promises, and that Defendants should be estopped from withdrawing them.

The statement that "DeGidio's future with IC is good" is too general and speculative to be considered clear and definite, and cannot support a promissory estoppel

claim.  However, the statement concerning adequate performance sets a clearer standard by which DeGidio's actions could be assessed.   In that case, the request (adequate performance) is reasonably, though not perfectly clear; the reward (non-termination) is clear and measurable.  That statement is sufficiently clear and definite.

DeGidio argues that it relied on IC's statements by investing time, effort, and money to promote IC's product line, as well as for rejecting other business opportunities, including the 2008 and 2016 offers to represent or sell competing product lines.  The 2008 offer does not provide much weight, given that DeGidio was at the time bound by an exclusive contract with IC.  However, DeGidio also alleges that it forwent an offer from a competitor in 2016 in reliance on Defendants' promise.  At the motion-to-dismiss stage, such allegations are sufficient.

Accordingly, the Court will grant the Motion to Dismiss as to the "future is good" promissory-estoppel claim, but will deny the Motion as to the "adequate performance" claim.

### b.  2019 Promises

The 2019 statement about growing the business is too general and speculative to be considered clear and definite.  Furthermore, as discussed, DeGidio has also not alleged any reliance on the 2019 statement.

Accordingly, the Court will grant Defendants' Motion to Dismiss as to the 2019 promissory estoppel claim.

**CONCLUSION**

Because James and Michael DeGidio have made no showing that they are third-party beneficiaries, the Court finds them without standing and will grant the Motion to Dismiss as to their claims.  Because any claims that Louis DeGidio, Inc., may have had under the Minnesota Franchise Act expired in 2013, the Court will grant the Motion to dismiss as to that entity's MFA claim.  Because the DeGidio has failed to plead a fraud or negligent misrepresentation claim, the Court will grant the Motion to Dismiss as to those claims.  Finally, because DeGidio has alleged one promise that was sufficiently definite, the Court will grant in part and deny in part the Motion to Dismiss as to DeGidio's promissory estoppel claims.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 63] is **GRANTED in part and DENIED in part as described herein.  The Motion is GRANTED as to:**

    a.  James DeGidio and Michael DeGidio's claims,

    b.  Louis DeGidio Inc.'s claims under the Minnesota Franchise Act,

    c.  All fraud and negligent misrepresentation claims

    d.  The promissory estoppel claims relying on the "future is good" 2007 promise and the 2019 promise.

These claims are **DISMISSED**.  The Motion is **DENIED** as to:

    a.  The promissory estoppel claim relying on the remaining 2007 promise.

DATED: August 12, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court